STATE OF NORTH CAROLINA IN THE GENEREAL COURT OF JUSTICE

COUNTY OF MECKLENBURG SUPERIOR COURT-DIVISION

FILED
23-CVS- 7397

2023 MAY 16 P 2:47

MECKLENBURG CO., C.S.C.

BY

Terry Creech

    Plaintiff,

Vs.

Charlotte Area Transit System,
City of Charlotte.

    Defendants.

**AMENDED COMPLAINT**
(Jury Trial Demanded)

DEFENDANT'S EXHIBIT
A

COMPLAINT

Plaintiff Terry Creech, by and through counsel, brings this action against against Charlotte Area Transit System (CATS) and City of Charlotte (collectively, "Defendants"), and alleges as follows:

PARTIES

1. Plaintiff Terry Creech is an individual and resident of Mecklenburg County, North Carolina.
2. Defendant Charlotte Area Transit System (CATS) is a public transportation system operated by the City of Charlotte, North Carolina.
3. Defendant City of Charlotte is a municipal corporation organized and existing under the laws of the State of North Carolina.

JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to North Carolina General Statutes § 1-75.4.
5. Venue is proper in this district pursuant to North Carolina General Statutes § 1-82 and § 7A-311(a)(1) because the events giving rise to Plaintiff's claims occurred in Mecklenburg County, North Carolina.

Facts:

1. Mr. Creech was employed with the city of charlotte in 2009.
2. In 2019 Mr. Creech joined the Charlotte Area Transit System as a Rail Controller
3. That CATS has been entrusted by the public to operate safe and competent transit lines.

4. CATS is subject to the laws of North Carolina, CATS Administrative Rules and Rail Controller Rulebook
5. The Rail Operations Control Center (ROCC) is a division within CATS organization.
6. Mr. Creech was employed to work in ROCC
7. ROCC has enumerated public policy for safe accountability to the public in the Rail Controller Expectations
8. That at all relevant times CATS was actively concealing public information relating to budget, equipment, and personnel
9. The job of rail controller is a high stress job and because of its dynamic nature require stress management efforts by employers
10. CATS failed to manage stressful working conditions and contributed to a hostile work environment
11. CATS further exacerbated its already hostile work environment by allowing a verbally abusive General Manager to harass employees
12. Mr. Creech attempted to raise concern about his stressful work environment and his abusive General Manager
13. Mr. Creech performed numerous work shifts as the SOLE controller in the ROCC
14. As a sole controller, Mr. Creech was tasked with monitoring two city rail lines, both security feeds, and multiple storage yards
15. As SOLE controller, Mr. Creech would often be unable to access his supervisors or anyone else for assistance.
16. The general public has a safety interest in the responsible execution of ROCC operations as rail lines through urban areas have a high probability of extensive damage.
17. As a matter of public policy, CATS rules expressly prohibit" falsifying any report, log, or record"
18. Public safety is directly linked to transparent and factual reporting by all CATS employees
19. The workplaces environment where Mr. Creech was employed was hostile and recklessly unsafe to the general public.
20. Mr. Creech was terminated unlawfully.
21. In May of 2022 General Manager and other conspirators carried out a fraudulent termination of Mr. Creech
22. All derailments are to be reported as a matter of public safety
23. In May of 2022, Mr. Creech reported a train derailment and followed protocol to redirect traffic and close the derailed line for inspection:
24. Mr. Creech was in fact working as the sole controller that night
25. Mr. Creech attempted to contact his supervisors but was unsuccessful for over an hour after the derailment occurred
26. General Manager and other conspirators, concealed evidence of the derailment
27. CATS was at this time actively concealing public information
28. In concealing this cover-up, general manager and other conspirators, referenced the derailment in question while terminating Mr. Creech but concealed further information from official records.
29. Mr. Creech was following public policy by reporting the derailment in relation to a legitimate public safety interest.
30. In direct violation of public policy, and CATS rules general manager and other conspirators falsified information.

31. In furtherance of this falsification of public records, general manager and other conspirators fraudulently accused Mr. Creech of Two safety violations in dealing with the derailment, while mischaracterizing to the general public that the in fact derailment was merely a "system error"
32. Company alleged that Mr. Creech committed a "safety error" because an operator did not wait for his proper clearance.
33. Company alleged that he errored in making a decision to divert traffic from the concealed derailment in question.
34. CATS CEO later admitted that no safety violations occurred
35. The "reasons" for Mr. Creech's termination were fraudulent to Mr. Creech and to the public
36. While concealing the facts of the derailment, CATS terminated Mr. Creech in a hostile manner and discredited him from any future employment with the city.
37. Mr. Creech was wrongfully discharged while carrying out a duty essential for public safety
38. Mr. Creech's employers were retaliating to the fact that Mr. Creech had properly reported notice of derailment per his obligations to CATS and the public
39. In retaliation, Mr. Creech was unlawfully terminated.
40. Employer egregiously violated a plethora of public policies

Age and Race Protection:

41. Mr. Creech is protected against discrimination on the basis of his age and race

FMLA

42. Prior to the events of May 2022 Mr. Creech had exercised his right to care for his parents under FMLA
43. Mr. Creech was told he was no longer eligible for leave under FMLA because one of his parents had died.
44. The events of Mr. Creech's termination occurred in very close proximity to his return to work.

CLAIM FOR RELIEF:

**Wrongful Termination in violation of Public Policy**

[Plaintiff incorporates by reference all facts alleged above]

**Hostile Work environment**

[Plaintiff incorporates by reference all facts alleged above]

45. Mr. Creech was harassed constantly and belittled while working.
46. Mr. Creech notified his superiors multiple times of this behavior

**Intentional Interference with a contract**

[Plaintiff incorporates by reference all facts alleged above]

**PUNITIVE DAMAGES**

[Plaintiff incorporates by reference all facts alleged above]

- Defendant's conduct, as alleged hereinabove, and to the extent the evidence may show, was committed deliberately, intentionally, purposefully, maliciously, and otherwise in a willful and wanton fashion, in violation of N.C. Gen. Stat §1D-1 et seq., and as such, Plaintiffs are entitled to punitive damages in such an amount as is deemed sufficient to punish and deter the Defendant and others from engaging in such further conduct.

WHEREFORE, the Plaintiff, P, prays the Court for the following relief:

1. That the Plaintiff, P, have and recover judgment against the Defendant, D, for compensatory damages in an amount *over* Ten Thousand Dollars ($10,000).

2. That Plaintiff be awarded any increased or treble damages or exemplary or punitive damages allowed by law;

3. That the cost of this action be taxed against the Defendant, D, including prejudgment interest pursuant to the North Carolina General Statutes Section 6 – 21;

4. That the Plaintiff be granted reasonable attorney's fees pursuant to North Carolina General Statutes Section 6 – 21;

5. That all issues triable by jury be so tried; and

6. For such other and further relief as the Court may deem just and proper.

Johathan Metcalf, Esq.
Bar # 45482
5309 Monroe Road, Ste. 112
Charlotte, NC 28205